IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHANDA KOZAK, Individually and as Personal Representative of the Heirs of and Estate of WALTER SCIFRES, Deceased, and KEITH SCIFRES, | § § § § § § | |
| Plaintiffs, | § § | Civil Action No.3:07-CV-1976-D |
| VS. | § § | |
| GUARD-LINE, INC., et al., | § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiffs' motion to remand presents the question whether the removing defendant has satisfied its heavy burden of establishing improper joinder of the Texas-citizen defendant. Concluding that it has not, the court grants plaintiffs' motion and remands this case to state court.[1]

---

[1] On February 1, 2008 UOP filed a notice of tag-along action, notifying the court that this case is a potential tag-along action to be transferred to the multidistrict asbestos litigation proceeding in the Eastern District of Pennsylvania. The pendency of the potential tag-along action does not interfere with this court's pretrial jurisdiction. The court will thus rule on the motion to remand without awaiting a potential transfer of the action. *See* J.P.M.L. R. 1.5 ("The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel . . . does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court.").

I

Plaintiffs Shanda Kozak, individually and as the personal representative of the Estate of Walter Scifres, and Keith Scifres sued defendants Guard-Line, Inc. ("Guard-Line") and UOP LLC ("UOP") in state court. They sought recovery for the personal injuries and eventual death of Walter Scifres ("Walter") from mesothelioma, allegedly arising out of workplace exposure to asbestos. Plaintiffs allege that UOP designed the refinery where Walker worked and was exposed to asbestos, and that UOP provided for the use of asbestos-containing materials and equipment onsite. Plaintiffs aver that Guard-Line was a manufacturer and supplier of asbestos gloves that Walter used.

UOP removed the case to this court based on diversity of citizenship. In its notice of removal, UOP maintained that Guard-Line's citizenship should be disregarded because it had been improperly joined to defeat diversity jurisdiction. UOP contended that plaintiffs named Guard-Line as a defendant in an earlier state-court lawsuit that complained of the same injuries ("the 2006 lawsuit"). It asserted that, under Texas law, plaintiffs cannot recover from Guard-Line in the present suit.[2] Plaintiffs now move to remand.

---

[2] On November 27, 2007, the day after UOP removed the case to this court, plaintiffs non-suited their claims against Guard-Line in the 2006 lawsuit.

II

"The doctrine of improper joinder . . . entitle[s] a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). "When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper." *Id.* at 576. Improper joinder is established by showing that there was either actual fraud in the pleading of jurisdictional facts or that the plaintiffs are unable to establish a cause of action against the non-diverse defendant in state court. *Id.* at 573 (citing *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).

Under the second alternative—the one at issue in this case—the test for improper joinder "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.*[3] "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was

---

[3]"A 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Smallwood*, 385 F.3d at 573 n. 9 (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n. 4 (5th Cir. 2000))

improper." *Id.* at 574.

Thus if UOP fails to meet its heavy burden of establishing that there is no reasonable basis for this court to predict that plaintiffs might be able to recover against Guard-Line under Texas law, this case must be remanded to state court.

III

A

UOP maintains that plaintiffs cannot recover from Guard-Line because Texas law provides that plaintiffs' present claims and those of the 2006 lawsuit are indivisible, and, consequently, that the present lawsuit was impermissible when filed. UOP contends that the determination whether a party is improperly joined is made at the time of removal. UOP therefore urges the court to assess whether Guard-Line was improperly joined in light of the uncontested facts at the time UOP removed the case—i.e., the day before plaintiffs non-suited their claims against Guard-Line in the 2006 lawsuit, a date when plaintiffs were still suing Guard-Line in two separate lawsuits.

B

The court first examines the threshold question whether it can consider post-removal events to determine whether the case must be remanded. UOP relies in part on *Cavallini v. State Farm Mutual Auto Insurance Co.,* 44 F.3d 256, 264 (5th Cir. 1995), in which the Fifth Circuit affirmed a district court's decision not to consider

- 4 -

a complaint that was amended post-removal in determining whether the plaintiffs asserted a cause of action against the defendant and thus whether joinder was proper. In so doing, the Fifth Circuit affirmed the rationale for determining removal jurisdiction "on the basis of claims in the state court complaint *as it exists at the time of removal*[.]" *Id.* at 264 (emphasis added).

This court has adhered to the general rule that "some subsequent developments in a case do not affect a court's prior-existing jurisdiction." *Garcia v. Boyar & Miller, P.C.*, 2007 WL 1556961, *2 (N.D. Tex. May 30, 2007) (Fitzwater, J.) (citing *IMFC Prof. Servs. of Fla. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 157 (5th Cir. 1982)). At the same time, it has recognized that

> [t]he court is not precluded from examining subsequent developments to determine whether a case must be remanded for lack of subject matter jurisdiction. By statute, remand is mandatory if at any time prior to final judgment it appears that the district court lacks subject matter jurisdiction. Moreover, § 1447(c) permits examination of subsequent developments to determine whether a case should be remanded.

*Id.* (citations and internal brackets and quotation marks omitted).

As the court explained in *Garcia*, there is no bright-line test for determining whether it can consider post-removal events in assessing its subject matter jurisdiction. *Id.* The court need not decide in the present case, however, whether it can consider plaintiffs' post-removal act of non-suiting Guard-Line. Assuming *arguendo* that the court must disregard the fact that plaintiffs

non-suited their claims against Guard-Line the day after the case was removed, UOP has failed to carry its heavy burden of showing that there is no reasonable basis to predict that plaintiffs might be able to recover against Guard-Line in state court.

C

UOP relies on the single action rule, as articulated by the Supreme Court of Texas in *Pustejovsky v. Rapid-American Corp.*, 35 S.W.3d 643 (Tex. 2000), to maintain that plaintiffs cannot recover against Guard-Line.  The court explained in that case that

> [t]he single action rule, also known as the rule against splitting claims, provides a plaintiff one indivisible cause of action for all damages arising from a defendant's single breach of a legal duty . . . .  The reason for the rule lies in the necessity for preventing vexatious and oppressive litigation, and its purpose is accomplished by forbidding the division of a single cause of action so as to maintain several suits when a single suit will suffice . . . .  This equitable doctrine is a species of res judicata that prohibits splitting a single cause of action and subsequently asserting claims that could have been litigated in the first instance.

*Id.* at 646-47 (citations omitted).

UOP maintains that, at the time of removal, two lawsuits were pending against Guard-Line, filed by the same plaintiffs, for the same injuries and claims.  UOP posits that the single action rule operates in these circumstances to prevent plaintiffs from

recovering against Guard-Line in the present, second lawsuit.[4]

What is determinative for this improper joinder inquiry is whether the Texas courts would apply the single action rule in such a way as to preclude the "possibility of recovery by the plaintiff against an in-state defendant." *Smallwood,* 385 F.3d at 573. Assuming, without deciding, that the single action rule *could* apply in this case,[5] it is not clear under Texas law whether plaintiffs' claims against Guard-Line would be subject to dismissal (i.e., no

---

[4]Relying on *Rico v. Flores,* 481 F.3d 234 (5th Cir. 2007), plaintiffs argue that the single action rule is irrelevant as a potential defense unless Guard-Line itself raises the defense. Plaintiffs aver that Guard-Line has not raised this defense, and that the defense must therefore be disregarded in determining whether joinder was improper. Plaintiffs' reliance on *Rico* for the proposition that, in order for the court to consider the single action rule as a defense, Guard-Line must raise it, is misplaced. The *Rico* panel noted that it is possible that "a Texas court will refuse to enforce claims that are barred by public policy *even when that policy is not affirmatively invoked by a party*." *Id.* at 240 (emphasis added). But it concluded that it need not decide this issue because it was remanding the case on the basis that application of the unlawful acts rule was too uncertain to support improper joinder.

[5]The cases reviewed by the court in *Pustejovsky* that apply the single action rule concern instances in which a party initiated a second lawsuit after a prior lawsuit had been resolved. *See, e.g., Pustejovsky*, 35 S.W.3d at 647 (noting application of single action rule in *Pecorino v. Raymark Industries, Inc.*, 763 S.W.2d 561 (Tex. App. 1988), in which the plaintiff filed suit for an injury resulting from asbestos exposure, after he settled a lawsuit with the same defendant for another asbestos-related injury); and *id.* at 648 (noting application of single action rule in *Graffagnino v. Fibreboard Corp.,* 776 F.2d 1307 (5th Cir. 1985), in which a plaintiff sued the same defendant in a second action after settling a prior action against the defendant). The *Pustejovsky* court declined on other grounds to follow *Graffagnino* and *Pecorino*. *See Pustejovsky,* 35 S.W.3d at 653.

possibility of recovery) or only to abatement (i.e., abatement until the impediment is removed). Unlike the cases cited in *Pustejovsky*, in which parties initiated second lawsuits after prior lawsuits had been resolved, plaintiffs sued Guard-Line in the present case while the 2006 lawsuit was still pending against Guard-Line. UOP's argument rests on the assumption that the operation of the single action rule would require the Texas court to dismiss the second suit. UOP provides no support, however, for this presupposition.

The case law on which UOP relies suggests instead that a Texas court faced with the second suit against Guard-Line could simply abate the suit pending the adjudication of the first suit. UOP points to the common-law rule in Texas that the court in which a suit is first filed acquires dominant jurisdiction to the exclusion of other courts. In support, UOP relies on two Texas cases, *Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex. 1974), and *Wyatt v. Shaw Plumbing Co.,* 760 S.W.2d 245, 247 (Tex. 1988). In *Curtis* the Supreme Court of Texas explained that "[a]ny subsequent suit involving the same parties and the same controversy must be dismissed if a party to that suit calls the second court's attention to the pendency of the prior suit by a plea in abatement." *Curtis,* 511 S.W.2d at 267. In *Wyatt* the court held that "[w]hen an inherent interrelation of the subject matter exists in two pending lawsuits, a plea in abatement in the second action

must be granted." *Wyatt,* 760 S.W.2d at 247. Although *Curtis* holds that the subsequent suit must be dismissed, this requirement is conditioned on the party's filing a plea in abatement. Here, UOP does not allege that it filed such a plea in state court. Moreover, the operation of a grant of plea in abatement, notwithstanding the language in *Curtis* that suggests dismissal, is abatement, not dismissal, of the second suit. Differentiating the effect between a "plea to the jurisdiction" and a "plea in abatement," the Supreme Court of Texas has explained that "[s]ustaining a plea to the jurisdiction requires dismissal; sustaining a plea in abatement requires that the claim *be abated until removal of some impediment.*" *Speer v. Stover,* 685 S.W.2d 22, 23 (Tex. 1985) (per curiam) (emphasis added). The case law on which UOP relies suggests that a Texas court would abate the present lawsuit until the impediment at issue was removed, that is, until plaintiffs non-suited their claims against Guard-Line in the 2006 lawsuit. Giving consideration to the language in *Curtis* that suggests that a court should dismiss the second suit, this at most presents some ambiguity concerning how a state court would address plaintiffs' claims against Guard-Line in the present suit. "Our precedent concerning improper joinder counsels that if there is ambiguity in the state law, this ambiguity must be resolved in favor of the plaintiff." *Rico v. Flores,* 481 F.3d 234, 244 (5th Cir. 2007). Applying the highly deferential improper joinder

- 9 -

standard, the court is unable to say that there is no reasonable basis to predict that plaintiffs might be able to recover against Guard-Line in the present case.[6] If this case were abated until the impediment was removed, and plaintiffs non-suited their claims in the 2006 lawsuit, then plaintiffs could apparently proceed against Guard-Line without being subject to the bar of the single action rule.

IV

UOP also argues in response to plaintiffs' remand motion that plaintiffs cannot recover from Guard-Line because they do not have viable claims against it. Specifically, UOP contends that despite extensive discovery in the 2006 lawsuit, plaintiffs never identified any Guard-Line products to which Walter was exposed, and that, according to Texas law, a plaintiff who is unable to identify the specific manufacturer of a product that caused the injuries complained of cannot, as a matter of law, sustain his products liability claim against the defendant. Plaintiffs reply that UOP cannot assert new grounds for removal once the 30-day deadline for removal has elapsed, and that this new argument is therefore

---

[6]UOP contends that plaintiffs habitually sue Guard-Line as they do in the present case to avoid removal of their asbestos-related lawsuits. As UOP recognizes, however, the Fifth Circuit has made it clear that in the improper joinder inquiry, "the motive or purpose of the joinder of in-state defendants is not relevant"; the inquiry is instead limited only to identifying "the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74.

foreclosed.  The court agrees and therefore does not consider UOP's new argument.

UOP could not properly raise new grounds for removal by post-removal amendment of its original notice of removal.  Neither can it do so in its opposition to plaintiffs' motion to remand.

> The power to amend pleadings to show jurisdiction is controlled by 28 U.S.C. § 1653.  Section 1653 does not allow the removing party to assert additional grounds of jurisdiction not included in the original pleading.  The [notice] may be amended only to set out more specifically grounds for removal that already have been stated, albeit imperfectly, in the original [notice]; new grounds may not be added and missing allegations may not be furnished.

*Prime Income Asset Mgmt. Co. v. Waters Edge Living LLC,* 2007 WL 2229050, at *7 (N.D. Tex. Aug. 3, 2007) (Fitzwater, J.) (citing *Iwag v. Geisel Compania Maritima, S.A.*, 882 F. Supp. 597, 601 (S.D. Tex. 1995)).

"[T]he court will not permit a removing defendant to defeat a remand motion by relying in its opposition on grounds for removal not included in its original or amended notice of removal."  *Id*. at *8 (citations and internal quotation marks omitted).  Although in *Prime Income Asset Management* the court declined to consider a wholly different basis for removal than that which had been asserted in the notice of removal (whereas here UOP presents new grounds for removal that still relate to improper joinder), the court cannot conclude that UOP is simply attempting "to set out

more specifically grounds for removal that already have been stated, albeit imperfectly, in the original [notice]." *Id.* at *7. UOP clearly and specifically set out in its notice of removal (and later amended notice of removal) the "single action" and "dominant jurisdiction" rules as the sole bases for its improper joinder argument. None of the allegations of improper joinder contained in the notice of removal intimated UOP's new argument (nor the 400 pages of materials filed in support) regarding the viability of plaintiffs' claims against Guard-Line. Therefore, assuming *arguendo* that subject matter jurisdiction could be premised on the grounds that UOP now offers, the court will not consider them because they are improperly raised.

\* \* \*

The court concludes that UOP has failed to meet its heavy burden of establishing that there is no reasonable basis for this court to predict that plaintiffs might be able to recover against Guard-Line under Texas law. It has therefore failed to establish that Guard-Line was improperly joined as a defendant. Accordingly, the court grants plaintiffs' December 21, 2007 motion to remand because this court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). This action is remanded to the 116th Judicial

District Court of Dallas County, Texas.  The clerk shall effect the remand in accordance with the usual procedure.

**SO ORDERED.**

March 14, 2008.

                                                    _____
                                                    SIDNEY A. FITZWATER
                                                    CHIEF JUDGE